**In the United States District Court
for the District of Kansas**

---

Case No. 22-cv-01165-TC-RES

---

UNITED STATES DEPARTMENT OF LABOR,

*Plaintiff*

v.

MR. CAO'S LLC, ET AL.,

*Defendants*

---

**MEMORANDUM AND ORDER**

The United States Department of Labor sued Mr. Cao's LLC, Caozheng Corporation, and Jason Cao. Doc. 1. It argues that Defendants violated multiple provisions in the Fair Labor Standards Act and the Families First Coronavirus Response Act. *Id.* at 3–7. The Department successfully sought an entry of default against Mr. Cao's LLC and Caozheng Corporation. Doc. 84 at 11. It now moves for default judgment against the two corporate defendants, and for summary judgment against Jason Cao. Doc. 90. For the following reasons, the Department's motion is granted.

**I**

**A**

**1.** Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are

1

irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record, *see Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to dispositive matters. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

**2.** A court may enter default judgment against a party that has failed to defend an action brought against it. Fed. R. Civ. P. 55(b)(2). Such a party effectively halts the adversary process. *See In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991). Default judgment may therefore be necessary to protect "the diligent party…[from] interminable delay and continued uncertainty as to his rights." *Id.* However necessary, "[d]efault judgments are a harsh sanction" and "[s]trong policies favor resolution of disputes on their merits." *Id.* at 732–33.

Consequently, default judgment is not an automatic entitlement. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010). By failing to respond, "a defendant admits to a complaint's well-pleaded facts." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). These factual admissions must satisfy "all material elements necessary to sustain a recovery under some viable legal theory" before a court grants default judgment. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008); *see also Vulfova v. Brand Brain Media*, LLC, No. 22-CV-01477, 2023 WL 7089909, at *2

(D. Colo. Oct. 26, 2023) (noting that the showing required to obtain a default judgment is similar to that required to defeat a motion to dismiss for failure to state a claim) (citing *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015)).

**3.** Jason Cao now proceeds pro se, which requires a generous construction of his filings. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit construction of legal theories on a plaintiff's behalf or assumption of facts not pled. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**B**

The following facts are taken from the Department's statement of uncontroverted facts. Doc. 91 at 3–19.[1] Those facts, where properly supported, are accepted as true for purposes of this motion because Defendants failed to respond as required by Fed. R. Civ. P. 56(e).[2]

Jason Cao and his wife own and operate two restaurants: Mr. Cao Japanese Steakhouse and Daimaru Steakhouse. *See* Doc. 91 at ¶¶ 6–8. Daimaru was investigated by the Department for compliance with the Fair Labor Standards Act roughly a decade ago. *Id.* at ¶ 12. It was then, as it is now, managed by Jason Cao. *Id.* at ¶ 13. When that investigation concluded, Jason Cao agreed to pay "minimum wage and overtime back wages to 39" Daimaru employees, "plus an equal amount in liquidated damages." *Id.* at ¶ 15. He also told an investigator that Daimaru "would take steps to ensure future FLSA compliance," after having "the general provisions of the FLSA" explained to him. *Id.* at ¶ 16–17.

---

[1] All document citations are to the document and page number assigned in the CM/ECF system. All facts are uncontroverted unless otherwise stated.

[2] By failing to respond, Defendants "confessed all facts asserted and properly supported in the summary judgment motion." *Murray v. City of Tahlequah, Okla.,* 312 F.3d 1196, 1200 (10th Cir. 2002). Nevertheless, a court must still determine that there are no genuine issues of law or fact, as required by Fed. R. Civ. P. 56, even in a situation where the nonmoving party does not respond to summary judgment. *Id.*

3

Other investigations soon followed. This time, the Department examined both Daimaru, Doc. 91 at ¶ 42, and Japanese Steakhouse, *id.* at ¶ 21. These investigations began in 2020, and covered activity from 2018 through 2020. *Id.* at ¶ 21, 42. The investigations concluded, finding that Defendants violated several provisions of the FLSA, *id.* at ¶ 68, and the Families First Coronavirus Recovery Act, *id.* at ¶ 71. The Department calculated the amount of back wages due to Daimaru and Japanese Steakhouse employees. *Id.* at ¶¶ 69–71. One of its investigators again explained the FLSA to Jason Cao. *Id.* at ¶ 72. And the Department "entered into a statute of limitations tolling agreement" with Daimaru, Japanese Steakhouse, and Jason Cao. *Id.* at ¶ 73.

After entering that agreement, the Department says, both Daimaru and Japanese Steakhouse continued to violate the FLSA. Doc. 91 at ¶¶ 74–75. So it sued, Doc. 1, seeking damages and injunctive relief from both steakhouses and from Jason Cao. All three defendants were represented by counsel until 2023, at which point attorneys for the defendants were permitted to withdraw their appearances. Docs. 43 & 50. Jason Cao proceeded pro se. Daimaru and Japaneses Steakhouse could not proceed pro se and were ordered to retain substitute counsel. Doc. 50 at 2–3.

They did not do so. And although Jason Cao proceeded pro se, he waded into a discovery dispute with the Department. *See* Doc. 86 at 4–6 (summarizing the Magistrate Judge's handling of this dispute). Thus, the Department moved for sanctions against the two corporate defendants, Doc. 77, and against Jason Cao, Doc. 80. The first motion was granted in part. Doc. 84. As a result, the Clerk of the Court was directed to enter default against the corporate defendants. *Id.* at 11. The second motion was also granted in part. Doc. 86. As a result, Jason Cao was precluded "from introducing evidence to contradict [the Department's] evidence" as to four categories of evidence. *Id.* at 19. Those categories are as follows. One, evidence "to show the times each of the employees of Mr. Cao Japanese Steakhouse started and stopped work each workday since July 26, 2020." *Id.* at 8. Two, evidence "to show the times each of the employees of Daimaru Steakhouse started and stopped work each workday since September 1, 2020." *Id.* at 9. Three, evidence "to show the wages, salaries, and tips paid to employees of Mr. Cao Japanese Steakhouse since September 1, 2020." *Id.* Four, evidence "to show any sick leave paid to Phitsamone Nouanlasy and Changseng Boutdara since December 1, 2020." *Id.*

4

The Department then moved for summary and default judgment. Doc. 90. Defendants did not respond.

## II

The Department seeks summary and default judgment against Defendants. Doc. 90. It argues that they violated the FLSA and Families First Coronavirus Recovery Act by underpaying employees, failing to keep records, employing underage workers, and denying sick leave. Doc. 91. For the following reasons, its motion is granted.

### A

The Department argues that Defendants are covered by the FLSA and violated its substantive provisions regarding minimum wages, recordkeeping, and underage employment. The Department seeks damages, liquidated damages, and an injunction against future FLSA violations.

#### 1

Employees are protected by the FLSA if they work for an "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206–07. Defendants Japanese Steakhouse and Daimaru are enterprises, because they performed similar work for a common purpose, under the direction of Jason Cao. Doc. 91 at ¶¶ 1–2, 4, 6–9; *see* 29 U.S.C. § 203(r)(1); *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973) ("[T]he three main elements of the statutory definition of 'enterprise'… [are] related activities, unified operation or common control, and common business purpose."). They are covered as enterprises because their employees were engaged in commerce, Doc. 91 at ¶¶ 3–4, and their "annual gross volume of sales" exceeded $500,000, *id.* at ¶¶ 10–11; 29 U.S.C. § 203(s)(1)(A) (outlining this requirement); *see also Donovan v. Pointon*, 717 F.2d 1320, 1322–23 (10th Cir. 1983).

Jason Cao is also covered by the FLSA and thus may be liable under it. He is an employer, defined by the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition is broad, and "the economic realities of the relationship govern." *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). The relationship between Jason Cao and his employees satisfies that definition. *See* Doc. 91 at ¶¶

8–9 (describing duties like hiring, firing, setting schedules, and determining pay); *Baker*, 137 F.3d at 1440 (considering similar duties as evidence of an employer-employee relationship).

2

Since Defendants are covered by the FLSA, they must comply with its requirements. Section 206(a)(1) of the FLSA sets a minimum wage, *see* 29 U.S.C. § 206(a)(1), and Section 215(a)(2) enforces it, *id.* at § 215(a)(2). The FLSA also imposes recordkeeping requirements, *id.* at § 211(c), and prohibits certain forms of underage employment, *id.* at § 212(c). The Department successfully argues that Defendants violated these sections in a variety of ways.

First, Defendants took a "tip credit" against their obligation to pay minimum wage. Doc. 91 at ¶¶ 36. A tip credit allows an employer to pay tipped employees sub-minimum cash wages when the resulting difference is made up for in tips. 29 U.S.C. § 203(m); *Marlow v. New Food Guy, Inc.*, 861 F.3d 1157, 1160 (10th Cir. 2017) (noting that the FLSA "gives employers of 'tipped employees' … the option of paying a reduced hourly wage … so long as their workers receive enough tips to bring them to the … minimum."). Yet Defendants required restaurant servers to share tips with a supervisor at Mr. Cao Japanese Steakhouse, and "retained tips … to subsidize … kitchen/chef employees" at Daimaru Steakhouse. Doc. 91 at 26. In other words, Defendants "operat[ed] invalid tip pools." *Id.* at 23. The tip pools were invalid because "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(b). But Defendants "required [servers] to contribute 20% of their credit card tops to a tip pool" at both Japanese Steakhouse and Daimaru. Doc. 91 at ¶¶ 38, 56. And portions of these pooled tips went to supervisors, *id.* at ¶¶ 25, 39–41, or to kitchen employees' salaries, *id.* at ¶ 57. That was contrary to Section 203(m)'s prohibitions. 29 C.F.R. § 531.52(a) ("An employer that takes a tip credit against its minimum wage obligations is prohibited from using an employee's tips for any reason other than that which is statutorily permitted in section 3(m)(2)(A).").

Second, Defendants failed to pay their tipped employees minimum wage. Doc. 90 at 28. Ordinarily, they could do so and still comply with the FLSA, if they claimed a tip credit. *See* 29 U.S.C. § 203(m); *Marlow*, 861 F.3d at 1160. But Defendants cannot claim a tip credit because

they operated an invalid tip pool, i.e., collected tips and then redistributed them to non-tipped employees. Doc. 91 at ¶¶ 25, 38–41, 56–57; *see also* 29 U.S.C. § 203(m); *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 901 n.4 (D. Kan. 2021) ("Valid mandatory tip pools under § 203(m) 'can only include those employees who customarily and regularly receive tips.'") (citations omitted). Since Defendants' tip pool was invalid, they must make up the difference between their tipped employees' actual wage and the federal minimum wage. *Marlow*, 861 F.3d at 1160 ("If there are not enough tips, the employer [claiming a tip credit] must pay the difference.").

Third, Defendants failed to pay proper overtime to servers and kitchen employees. Generally, employees who work more than 40 hours in a workweek are due at least one-and-one-half times their regular rate as overtime. 29 U.S.C. § 207(a)(1). In this context, the servers' regular rate is minimum wage. *See Pizzella v. Diner*, No. CV 18-4663, 2021 WL 1649517, at \*5 (E.D. Pa. Apr. 27, 2021) (subsequent history omitted); 29 C.F.R. §§ 531.60, 778.5. The kitchen employees earned a salary. Doc. 91 at ¶¶ 26, 33, 62. Their regular rates can be calculated from that salary. *See* 29 C.F.R. § 778.113; *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 n.16 (1942). These employees are not exempt under Section 207(a)(1), so they were entitled to one-and-one-half times their regular rate when they worked more than 40 hours in a workweek.[3] 29 U.S.C. § 207(a)(1); *Sharp v. CGG Land (U.S.) Inc.*, 840 F.3d 1211, 1214 (10th Cir. 2016). Defendants did not comply with this rule, either by denying overtime altogether or by calculating overtime improperly. Doc. 91 at ¶¶ 26, 32–34, 51–52. Either way, they now owe the difference. *See Sharp*, 840 F.3d at 1214.

Fourth, Defendants failed to "maintain records of the hours worked by many of the kitchen/chef employees who were paid a flat salary." Doc. 91 at 31; *see also id.* at ¶¶ 62–63. They also failed to maintain records for hourly employees, specifically records that would show hours worked, overtime hours worked, and rates of pay. *Id.* at ¶¶ 63; 29 C.F.R. § 516.2(a)(6) (listing certain required items of information). Failing to keep these records violates Sections 211(c) and 215(a)(5) of the FLSA. *Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792, 795 (10th Cir. 1976);

---

[3] Supervisors are often exempt from overtime requirements, but those exemptions must be raised as affirmative defenses. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974). Defendants did not raise any such affirmative defense. *See generally* Doc. 28.

7

29 U.S.C. § 211(c) (describing covered employers' recordkeeping obligations); 29 U.S.C. § 215(a)(5) (enforcing Section 211(c)). So when Defendants failed to keep these records, they violated the FLSA.

Fifth, Defendants employed minors younger than 16 years of age, in an enterprise in commerce or in the production of goods for commerce. Doc. 91 at ¶¶ 64–67. It is undisputed that, for example, "[t]he Steakhouses employed minors under the age of 16 as hosts, bussers, and food runners. *Id.* at ¶ 64. But the FLSA provides that "[n]o employer shall employ any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 212(c); 29 U.S.C. § 215(a)(4) (enforcing Section 212 of the FLSA). And the term "oppressive child labor" includes all employment of minors under the age of 16 that contradicts the Department of Labor's relevant regulations. *See* 29 U.S.C. § 203(l) (providing the Department with regulatory authority); 29 C.F.R. § 570.117 (elaborating on the definition of "oppressive child labor"); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011) (outlining the FLSA's "oppressive child labor" prohibitions). As a result, Defendants violated the FLSA's restrictions on underage employment.

**3**

Given the violations described above, the Department has calculated the back wages owed to "39 Mr. Cao Japanese Steakhouse employees" and "52 Daimaru Steakhouse employees." Doc. 91 at 34 (citing Doc. 91 at ¶¶ 69–70). It argues that Defendants owe liquidated damages on top of the back wages and requests an injunction to prevent future FLSA violations. *Id.* at 35–38.

**a.** Liquidated damages in FLSA cases are standard; they "essentially doubl[e] the plaintiffs' damage award." *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1272 (10th Cir. 2011); 29 U.S.C. § 216(b). Sometimes a court may "award less or no liquidated damages," as when an employer "establish[es] that his conduct was both in good faith and based on a reasonable belief that his conduct was not in violation of the FLSA." *Id.*; 29 U.S.C. § 260. An employer likely lacks a reasonable belief that his or her conduct complied with the FLSA if he or she violates the FLSA willfully. *See Mumby*, 636 F.3d at 1272.

Defendants violated the FLSA willfully. A willful FLSA violation requires proof that an employer "either knew or showed reckless

disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255 (10th Cir. 2017). That requirement is satisfied as against Defendants. They knew of the FLSA's requirements, because they have been investigated by the Department for FLSA violations in the past. Doc. 91 at ¶¶ 12–20. That knowledge notwithstanding, Defendants resumed or engaged in practices that violated the FLSA. Those facts suffice to show willfulness. *See, e.g.*, *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1335 (10th Cir. 1998) (finding that a prior investigation, even without establishing violations "through litigation," could suggest willfulness); *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999) (concluding that an employer who "had been investigated for violations twice in the past … [and] received explanations of what was required to comply with the Act" violated the FLSA willfully).

Technically, willful FLSA violations are not the same thing as violations based on an unreasonable belief that one's actions complied with the FLSA. *See Mumby*, 636 F.3d at 1272. But that technical distinction does not affect the result for Defendants. They have not attempted to explain why their willful violation should not also indicate unreasonableness. And even if they reasonably believed that they were complying with the FLSA, a court would retain discretion to award liquidated damages anyway. *Mumby*, 636 F.3d at 1272 (citing *Dep't of Lab. v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994)).

**b.** Along with damages, the Department requests an injunction. It may seek one, and a district court may provide one, "for cause shown." 29 U.S.C. § 217. The burden to show cause is on the Department. *Metzler v. IBP, Inc.*, 127 F.3d 959, 963 (10th Cir. 1997). The Department must at least indicate "that there exists some cognizable danger of recurrent violation." *Id.* This inquiry points a court to "many factors … including the employer's previous conduct, its current conduct, and the reliability of its promises of future compliance." *Id.* Each of those factors cuts in favor of an injunction. Defendants previous conduct reveals FLSA violations and an attempt by the Department to remedy them. Doc. 91 at ¶¶ 14–15. The Department also successfully sought recovery for Defendants' employees in this case. *See* Section II.A.1, *supra*. So Defendants have continued to resist compliance with the FLSA. And because Defendants have stopped engaging with this case, *see* Doc. 84 at 3–4; Doc. 86 at 4–6, there are particularly strong reasons to think that they cannot make reliable promises of future compliance.

*Cf. Metzler*, 127 F.3d at 963; *Solis v. Supporting Hands, LLC*, No. CIV 11-0406, 2013 WL 1897822, at *25 (D.N.M. Apr. 30, 2013) ("[P]ast non-compliance, failure to ascertain FLSA's requirements, and refusal to pay back pay … [indicate that] an injunction is appropriate to prevent future violations of the FLSA."). For those reasons, "an injunction permanently enjoining and restraining defendants from violating FLSA Sections 206, 207, 211, 212(c), 215(a)(2), 215(a)(4), and 215(a)(5) is appropriate." Doc. 91 at 39 (summarizing the Department's request).

**B**

The Department also alleges that Defendants violated the Families First Coronavirus Response Act. Doc. 91 at 49. The FFCRA was effective between April 2 and December 31, 2020, and it "temporarily required employers to provide public health emergency leave to eligible employees who were unable to work due to the COVID-19 pandemic." *Bachor v. Bd. of Cnty. Commissioners of La Plata Cnty.*, No. 21-CV-02276, 2023 WL 9468322, at *1 (D. Colo. June 12, 2023); *see generally* FFCRA, Pub. L. No. 116-127, 134 Stat. 178 *et seq*. It covered Defendants, because the FFCRA applied to private employers "engaged in Commerce or in any industry or activity affecting commerce that … employ[ed] fewer than 500 Employees." 29 C.F.R. § 826.10.[4]

Two of Defendants' employees, Phitsamone Nouanlasy and Changseng Boutdara, missed work from December 16 to December 31, 2020 due to COVID-19. Doc. 91 at ¶¶ 58–60. Changseng had COVID-19, and as his spouse Phitsamone was advised to quarantine alongside him. *Id.* at ¶ 59. When Changseng was hospitalized, Phitsamone went with him. *Id.* She relayed this information to Jason Cao, who "told her that [their absence] was fine, and … did not ask … for any additional information." *Id.* at ¶ 60. When the two returned to work, Cao "told them that he would not be paying them for the time missed," and indeed "has not paid [them] for the time they could not work due to COVID-19 in December 2020." *Id.* at ¶ 61. This decision violated the FFCRA, which required an employer to "provide to each of its Employees Paid Sick Leave to the extent that Employee is unable to work due to … a Federal, State, or local quarantine or isolation order related to COVID-19," or because "[t]he Employee has been advised by a health care provider to self-quarantine due to concerns related to

---

[4] The statute authorizes these implementing regulations. *See* FFCRA, Pub. L. No. 116-127, § 5111, 134 Stat. 178, 201.

COVID-19," or because "[t]he Employee is caring for an individual" subject to a quarantine order. *See* 29 C.F.R. § 826.20(a)(1). Employees had to provide notice, *see id.*, but Phitsamone and Changseng gave notice, Doc. 91 at ¶ 60.

The FFCRA's leave provisions were enforced through the FLSA.[5] *Su v. Jesse's Cleaning Serv., LLC*, No. 4:21-CV-123, 2024 WL 924487, at *4 (N.D. Miss. Mar. 4, 2024) (summarizing how courts apply the FLSA). As a result, "an employer's failure to provide paid sick leave as required by the [FFCRA] is considered a failure to pay the minimum wage in violation of [Section 206] of the FLSA." *See id.*; 29 C.F.R. § 826.150(b)(1). Since Defendants did not provide FFCRA-required sick leave, but should have, they owe back wages to Phitsamone and Changseng. And because the FLSA enforces that requirement, liquidated damages are also appropriate. 29 U.S.C. § 216(b) (providing for liquidated damages in the case of, among other things, Section 206 violations).

### III

For the foregoing reasons, the Department's Motion for Summary Judgment and Default Judgment, Doc. 90, is GRANTED. Defendants are permanently enjoined from violating FLSA Sections 206, 207, 211, 212(c), 215(a)(2), 215(a)(4), and 215(a)(5).

It is so ordered.

Date: December 26, 2024          s/ Toby Crouse
                                 Toby Crouse
                                 United States District Judge

---

[5] Technically, the FFCRA contained several divsions. One was the Emergency Paid Sick Leave Act, which is relevant in this case. Pub. L. No. 116–127, 134 Stat. 178, 195–99. The other was the the Emergency Family and Medical Leave Expansion Act, which the Department does not raise. Pub. L. No. 116–127, 134 Stat. 178, 189–191.